

FOR PUBLICATION

FILED

MAR 16 2015

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>MICHAEL W. BADIOU and<br>ANN M. BADIOU,<br><br>        Debtors.<br>_____<br><br>SENTRY SELECT INSURANCE<br>COMPANY and AMERICAN<br>CHEVROLET-GEO, INC.,<br><br>        Plaintiffs,<br><br>v.<br><br>MICHAEL W. BADIOU,<br><br>        Defendant.<br>_____ | Case No. 13-90888-E-7<br><br><br><br><br><br><br><br>Adv. Proc. No. 13-9027<br><br><br><br>DATE: December 8, 2014 Trial<br>TIME: 9:30 a.m.<br>DEPT: E |

**SUPPLEMENTAL FINDINGS OF FACT**
**AND**
**CONCLUSIONS OF LAW**

    On December 18, 2014, this court stated oral findings of fact and conclusions of law on the record in this Adversary Proceeding. Fed. R. Civ. P. 52(a)(1); Fed. R. Bank. P. 7052. At that hearing, the parties presented arguments on whether the punitive damages claim could be assigned or be subject to subrogation. The parties thereafter filed post-trial briefs on the issue. Upon consideration of the additional arguments and post-trial briefs,

the court determined that supplemental findings of fact and conclusions of law are necessary to provide a complete record on the issue.[1]

**SUPPLEMENTAL FINDINGS AND CONCLUSIONS**

The court is presented with the issue of whether Sentry Select Insurance Company ("Sentry Select") obtained by subrogation the rights of American Chevrolet-Geo, Inc. ("Insured") to prosecute a claim for punitive damages arising from the conduct of Michael Badiou ("Defendant-Debtor"). Sentry Select is prosecuting this Adversary Proceeding asserting the claim it obtained by subrogation from Insured for $349,899.75 in damages arising from the misconduct of the Defendant-Debtor.

As shown in the competing post-trial briefs, analysis of whether a claim for punitive damages may be transferred by assignment or subrogation can quickly become mired in purported conclusive statements by the California Court of Appeal. In considering this issue, this court begins with the basics.

For questions of state law, a federal court is bound by the decisions of the highest court of that state. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, and treatises. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F. 3d 958, 960 (9th Cir. 2001).

Under settled canons of statutory construction, the California

---

[1] The court set a hearing for further argument on this issue. The parties have stipulated to waive the additional orgal argument. Stipulation, Dckt. 147.

2

Supreme Court[2] ascertains the meaning of a statute by applying the usual and ordinary meaning of the words. *Kimmel v. Goland*, 51 Cal. 3d 202, 208 (Cal. 1990). The statute's plain meaning controls the court's interpretation unless the words are ambiguous. *Green v. State of California*, 42 Cal. 4th 254, 260 (Cal. 2007). When more than one statutory construction is arguably possible, the Supreme Court selects the construction that comports most closely with the apparent legislative intent, seeking to promote, rather than defeat, the statute's purpose. *Imperial Merchant Services, Inc. v. Hunt*, 47 Cal. 4th 381, 388 (Cal. 2009).

## ASSIGNABILITY OF CLAIMS

Before rushing headlong into the various state law insurance cases cited in the competing briefs, this court first considers California law relating to the assignability and the enforcement of claims by an assignee or subrogee. For a claim to be subject to subrogation, it must be assignable. *Fifield Manor v. Finston*, 54 Cal. 632, 641 (Cal. 1960). California Civil Code § 954 provides that a "thing in action" arising out of the violation of a property right or out of an obligation may be transferred by the owner.[3] A "thing in action" is further defined to be "[a] right to recover money or other personal property by a judicial proceeding." Cal. Civ. 953.

The Supreme Court has qualified the "every thing in action is

---

[2] Unless otherwise stated, references to "Supreme Court" are to the California Supreme Court.

[3] This Civil Code Section was enacted in 1872 and amended in 1990, Chapter 79 § 2 (AB 759). The 1990 amendment did not alter that portion of the statute applicable to the question before the court.

3

assignable" rule with the limited exception that certain "personal rights" are not assignable.

> It is a rule universally recognized that one who is injured personally may not assign a claim growing out of such tort but there is some authority to the effect that almost every other kind of property is assignable.

*Perkins v. Sunset Tel. & Tel. Co.*, 155 Cal. 712, 720 (Cal. 1909). Going back further in time, the Supreme Court enunciated this exception in *Rued v. Cooper*, 109 Cal. 682, 694 (Cal. 1893), quoting the decision of the New York Court of Appeals in *Meech v. Stoner*, 19 N.Y. 26, 30 (NY 1859), stating:

> 'Assignability of things in action is now the rule; nonassignability, the exception; and this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party, and to contracts of a purely personal nature, like promises of marriage.'
>
> The court in this case [Meech] sustained the views above quoted by further argument and the citation of the number of cases, both English and American, and in these views we concur.

In the 20th Century, the California Court of Appeal addressed the personal wrongs exception to the general rule in the context of a legal malpractice claim. In *Fireman's Fund Ins., Co. v. McDonald, Hecht & Solberg*, 30 Cal.App.4th 1373, 1381-1382 (Cal.App. 1994), the Court of Appeal stated:

> It is now well settled that under California law a former client may not voluntarily assign his claims for legal malpractice against his former attorneys. In *Goodley v. Wank & Wank, Inc.* (1976) 62 Cal. App. 3d 389, and more recently in *Jackson v. Rogers & Wells, supra*, 210 Cal. App. 3d p. 336, the courts determined that although choses in action for property or pecuniary losses are generally assignable, a claim for legal malpractice is more akin to those types of claims which are not assignable, i.e., claims for personal injury, wrongs of a purely personal nature (such as injuries to the reputation or feelings of the injured party) or breaches of contracts of a purely personal nature (such as

4

promises of marriage). [Citations.] *Goodley* and *Jackson* concluded that the attorney-client relationship (although containing contractual elements) is unique and involves a highly personal and confidential relationship, making the relationship "… more analogous to a contract of a personal nature than to an ordinary commercial contract' [citation], and rendering claims for negligent breach thereof nonassignable." *(Kracht v. Perrin, Gartland & Doyle, supra,* 219 Cal. App. 3d at p. 1023, italics in original.) FN.7.

---

FN.7. In *Jackson v. Rogers & Wells, supra,* 210 Cal. App. 3d 336, we noted "the hybrid contract-tort nature" of claims for legal malpractice. (*Id.* at p. 342.)

---

The malpractice claim not being assignable, a third-party could not acquire it through subrogation. *Id.* at 1384.

In 2006, the Supreme Court addressed the assignability of tort claims in *Essex Ins. Co. V. Five Star Dye House, Inc.*, 38 Cal.4th 1252 (Cal. 2006). In *Essex*, the specific question presented to the Supreme Court was whether an insured's tort claim for attorneys' fees[4] relating to a claim for the tortious breach of the covenant of good faith and fair dealing could be assigned. The Supreme Court reaffirmed the general rule of assignability of claims, stating:

> California, as set forth both in case law and by statute, maintains a policy encouraging the free transferability of all types of property. (*See* Civ. Code, §§ 954, 1044, 1458; *Farmland Irrigation Co. v. Dopplmaier* (1957) 48 Cal.2d 208, 222 [308 P.2d 732]; *Robert H. Jacobs, Inc. v. Westoaks Realtors, Inc.* (1984) 159 Cal. App. 3d 637, 645.) "[I]t is a fundamental principle of law that one of the chief incidents of ownership in property is the right to transfer it." (*Bias v. Ohio Farmers Indemnity Co.* (1938) 28 Cal. App. 2d 14, 16.)
>
> This "chief incident of ownership" applies equally to tangible and intangible forms of property, including

---

[4] In *Brandt v. Superior Court*, 37 Cal.3d 813 (Cal. 1985), the Supreme Court determined that attorneys' fees may be recovered as tort claim damages relating to a breach of the covenant of good faith and fair dealing.

5

causes of action. Originally codified in 1872, section 954 states, "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." An assignment is a commonly used method of transferring a cause of action.

*Id.* at 1259.

In *Essex,* notwithstanding the general rule of assignability, it was asserted that the tort claim for the attorneys' fees was within the "personal in nature claim" exception. The Supreme Court cited its earlier decision in *Murphy v. Allstate Ins. Co.*, 17 Cal.3d 937 (Cal. 1976), in which it discussed that an insured could hold a bundle of claims, some of which were assignable and some (such as a claim for emotional distress damages) which were not assignable or subject to subrogation. With such a mix of claims, assigning only a portion of the claims puts the insured at risk of losing the ability to prosecute the unassignable claims based on the rule against the splitting of a cause of action. *Id.* at 943.

In *Essex*, the Supreme Court rejected the contention that the *Brandt* tort right to attorneys' fees was *per se* nonassignable. *Essex*, 38 Cal.4th at 1264. Disallowing the recovery of the attorneys' fees which flowed from the assignable claim would result in a "windfall" for the wrongdoer. Further, prohibiting the transfer of all of the rights relating to the assignable claim would discourage the assignment of such claims, which would be contrary to the public policy favoring transferability of causes of action. *Id.*

The Supreme Court in *Essex* also rejected the contention that allowing the recovery by the assignee of the attorneys' fees

relating to the tort claim would be against public policy because it would not serve to make the injured insured whole. The Supreme Court concluded:

> Disallowing recovery of *Brandt* fees in cases such as this would result in a windfall for the insurer, whose liability for tortious conduct would be significantly reduced because of the fortuitous circumstance of the assignment of the bad faith claim. As we have recognized, recoverable *Brandt* fees may exceed the contract benefits wrongfully withheld. *(Cassim v. Allstate Ins. Co., supra,* 33 Cal.4th at p. 809.) Disallowing recovery of *Brandt* fees incurred by assignees would also tend to discourage assignment of bad faith claims against insurance companies, contrary to the public policy favoring transferability of causes of action.

*Id.*

## PUNITIVE DAMAGES

California Civil Code § 3249, enacted in 1872, is the codification of the basis for punitive damages in California. In relevant part, California Civil Code § 3249 states:

> (a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. 3249(a).

The Supreme Court addressed punitive damages and who may properly assert them in *People v. Superior Court*, 9 Cal.3d 283, 285 (Cal. 1973). The Supreme Court was presented with a claim for punitive damages by the California Attorney General on behalf of all Californians. No claim for compensatory damages for any persons harmed by the alleged unfair business practices was asserted by the Attorney General. As discussed below, the Supreme Court concluded that a general demand for punitive damages,

7

divorced from actual harm to a person, could not be asserted by the Attorney General.

It is well-established that punitive damages are not damages to make an injured person whole. "[P]unitive damages serve but one purpose – to punish and through punishment, to deter." *Dyna-Med, Inc. v. Fair Employment & Housing Com.*, 43 Cal.3d 1379, 1387 (Cal. 1987).[5]

> Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct. See Restatement (Second) of Torts § 908 (1979); W. Prosser, Law of Torts 9-10 (4th ed. 1971).

*Newport v. Fact Concerts*, 453 U.S. 247, 266-267 (1981). The non-compensatory nature of punitive damages has been described by the Supreme Court as, "[e]ssentially a windfall for plaintiffs that the law permits for public policy reasons." *Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, 812 (Cal. 2004).

The Supreme Court has also addressed punitive damages being a remedy, rather than a separate claim in its own right, dependent on the plaintiff having a separate claim for actual damages. The remedial nature of punitive damages is stated to be:

> In California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages. (See Civ. Code, § 3294; *Mother Cobb's Chicken T., Inc. v. Fox* (1937) 10 Cal.2d 203, 205; *Hilliard v. A.H. Robins Co.* (1983) 148 Cal.App.3d 374, 391; compare Rest.2d Torts, § 908, com. c.) Even nominal damages, which can be used to support an award of punitive

---

[5] See also *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal.4th 310, 317 (Cal. 1999); *Walnut Creek Manor v. Fair Employment & Housing Com.*, 54 Cal.3d 245, 271 (Cal. 1991); *Neal v. Farmers Ins. Exchange*, 21 Cal. 3d 910, 917 Fn. 13 (Cal. 1978). ("The purpose of punitive damages is to punish wrongdoers and thereby deter the commission of wrongful acts.")

8

    damages, require actual injury. (*Fields v. Napa Milling Co.* (1958) 164 Cal.App.2d 442, 447-448.)

*Kizer v. County of San Mateo*, 53 Cal. 139, 148 (Cal. 1991). There is no independent cause of action for punitive damages, but such rights are incidents of another claim for damages. *Hilliard v. A.H. Robins, Co.*, 148 Cal.App. 3d 374, 391 (Cal. App. 1983).

    Defendant-Debtor's argument is built on the California Court of Appeal decision in *French v. Orange County Inv. Corp.*, 125 Cal.App 587 (Cal.App. 1932). The plaintiff in *French* was an assignee asserting a claim alleging "fraudulent conversion of a deed." That plaintiff assignee contended that the defendants had misrepresented to the assignor the value of the property to be sold and that the assignor's escrow had improperly released the deed contrary to the instructions of the assignor. No rights to the property which was the subject of the deed were asserted or purported to have been assigned to that plaintiff.

    The District Court of Appeal affirmed the trial court ruling that the assignee in *French* could not prosecute a claim for punitive damages, holding:

> The plaintiff's objection that he was not awarded exemplary damages in addition to compensatory damages is not well taken, because plaintiff prosecutes this action solely and only as assignee of the cause of action of the injured persons who owned the property at the time of the alleged unlawful conversion of their deed. In 8 Ruling Case Law page 595, it is said: "Exemplary damages are allowed only to the immediate person receiving the injury, either in a suit prosecuted by himself or by someone for his use." This appears to be harmonious in principle with the rule that "a bare right to file a bill in equity for fraud committed upon the assignor will be denied because the transfer of such right is against public policy." (*Swallow v. Tungsten Products Co.*, 205 Cal. 207, 217.)

*Id.*, pg. 591. In *French*, the forgoing statement that punitive damages are not assignable is the only basis for that portion of the ruling.[6]

Consideration of the statement in *French* begins with the ruling in *Swallow v. Tungsten Products Co.*, 205 Cal. 207, 217 (Cal. 1928). In *Swallow*, the Supreme Court held that the assignee of property rights (mining claims) could assert a claim for fraud against a third-party asserting a competing interest in the mining rights. The competing interest asserted by the third-party were obtained through an execution sale conducted for a prior judgment entered against the assignor. The assignee contended that fraud had been committed in connection with the prior judgment having been entered against the assignor.

The assignee in *Swallow* alleged that fraud on the court (misrepresentation of service) rendered the prior judgment void and that no interest could have been obtained through the execution sale to the third-party purchaser. The Supreme Court concluded that because the assignee of the mining claim was asserting the fraud claim to directly attack the prior judgment entered against the assignor in defending the assigned mining claim, the fraud claim could be assigned as well. *Swallow* was not a case in which a naked fraud claim, unassociated to other assignable rights, was being asserted by an assignee. *Id.* at 217-218 (ruling of District

---

[6] Defendant-Debtor also directs the court to *Dugar v. Happy Tiger Records, Inc.*, 41 Cal.App. 3d 811 (Cal.App. 1974), in support of the contention that California law provides a *per se* bar to any assignment of punitive damages. The decision in *Dugar* is based on citing to the holding of the Supreme Court in *People v. Superior Court, infra*, and the District Court of Appeal in *French*, and does not provide additional analysis on this issue.

10

1  Court of Appeal incorporated into Supreme Court decision).

2     This court has been directed by Sentry Select to the recent decision from the U.S. District Court in *Public Service Mutual Insurance Co. v. The Liberty Surplus Insurance Corporation*, 2:14-cv-00226, 2014 U.S. Dist. LEXIS 139773 (E.D. Cal. 2014). In *Public Service* the battle was between two insurance companies. The secondary insurance company paid the insured for a loss and filed suit against the primary insurance company. The secondary insurance company asserted various claims against the primary insurance company, asserting claims which included indemnification, breach of the covenant of good faith and fair dealing, and punitive damages.

13    The primary insurance company filed a motion to strike various causes of action, including the punitive damages claim. The District Court concluded that under California law punitive damages are treated as a remedy which is attached to another independent claim as opposed to a separate claim in and of itself. Finding that the secondary insurance company had obtained the independent claim for damages, the District Court determined that the secondary insurance company had acquired and could assert the punitive damages claim, as a remedy for the assignable claim, against the primary insurance company. *Id.* at *27-*28.

## DISCUSSION

This court is convinced that the Supreme Court has not, and would not, state California law to be that there is a *per se* bar on the assignment of a punitive damages claim. The Court of Appeal in *French*, which relies upon the decision in *Swallow*, quotes only that portion of *Swallow* which states, "a bare right to file a bill in

11

equity for fraud committed upon the assignor will be denied because the transfer of such right is against public policy" *French v. Orange County Inv.*, 125 Cal.App. at 591. What the decision in *French* does not address is the further statement of the Supreme Court that:

> "In *Emmons v. Barton*, 109 Cal. 662, the court referred to the rule stated in *Whitney v. Kelley*, *supra*, that a mere right to complain of fraud is not assignable. But the court said that this rule 'does not apply to a case where the right to sue for a fraud is merely incidental to a subsisting substantial property which has been assigned, and which is itself intrinsically susceptible of legal enforcement.' The same proposition is repeated in *Kemp v. Enemark*, 194 Cal. 748, 756."

*Swallow v. Tungston Products Co.*, 205 Cal. at 219 (incorporating the ruling of the District Court of Appeal). Going directly to the prior ruling, the Supreme Court states in *Emmons v. Barton*, 109 Cal. 662, 667 (Cal. 1895):

> But the rule in question [nonassignability of bare fraud claim], as established by the authorities, applies only to a case where the assignment does not carry anything which has itself a legal existence and value, independent of the right to sue for a fraud. It does not apply to a case where the right to sue for a fraud is merely incidental to a subsisting substantial property which has been assigned, and which is itself intrinsically susceptible of legal enforcement. An examination of the authorities -- many of which are quoted and referred to in *Whitney v. Kelley*, *supra* -- discloses that the rule in question does not govern in cases where the assignors "have some substantial possession and some capability of personal judgment, and not a mere naked right to overset a legal instrument or to maintain a suit."

California Civil Code § 954 starts with the general rule that claims (things in action) are assignable. *Rued v. Cooper*, 109 Cal. at 692. It is only wrongs to the person, reputation, or feelings of the injured party, or to contracts of a purely personal nature, like promises of marriage. *Id.* at 693.

The remedy of punitive damages asserted by Sentry Select is

12

not one which is related to a non-assignable claim for such personal wrongs or contracts. This court has determined that Defendant-Debtor committed embezzlement and engaged in willful and malicious conduct which resulted in $349,899.75 in damages to the Insured. Defendant-Debtor engaged in business transactions for the Insured in selling used vehicles from Insured's inventory. While the principals of Insured may be annoyed or disappointed with Defendant-Debtor's conduct, the only damages and claims of the Insured (a corporation) are simply business damages of the corporation.

Sentry Select did not obtain by subrogation merely a right to sue for punitive damages. Sentry Select obtained the claim for actual damages caused by the wrongful conduct of Defendant-Debtor to the Insured's business. To obtain these rights by subrogation, Sentry Select paid the actual damages because of its obligation under the insurance policy obtained from it by Insured. For the rights and claims for actual damages caused by Defendant-Debtor obtained by Sentry Select, the claim for punitive damages is the incidental remedy.

This is not a situation where the punitive damage claim is treated as a commodity to be traded in a marketplace. Rather, Sentry Select was contractually required to pay Insured the actual damages caused by Defendant-Debtor. Having performed as required under the insurance policy, Sentry Select obtained by subrogation the actual damages claim in the amount of $349,899.75, along with the punitive damages remedy that is related to that actual damages claim.

Asserting the punitive damage claim by Sentry Select differs

substantially from the State of California in *People v. Superior Court*, in which the State was not allowed to assert a bare claim for punitive damages, unrelated to any actual damages claim of the State. *People v. Superior Court*, 9 Cal.3d at 287. The Supreme Court concluded that the State could not assert a claim for punitive damages without also asserting a claim to which the punitive damages remedy related. This court reads *People v. Superior Court* not to say that a punitive damages claim could never be asserted by an "assignee." Rather, the ruling states that a naked claim for punitive damages, for which there is no independent claim for actual damages to which the punitive damages remedy relates, cannot be asserted by an assignee.

The punitive damages award, either for the Insured or Sentry Select, is a "windfall" imposed under California Law to deter the conduct upon which the underlying claims are based – whether such conduct would further be committed by the Defendant-Debtor or some other similarly situated person. If the punitive damages remedy was not part of the rights and claims subrogated to Sentry Select, it would be stranded as a lone unenforceable remedy held by the Insured for which no claim existed.

Additionally, as this court addressed in its oral ruling at trial, the award of punitive damages in this Adversary Proceeding serves the dual public policy of punishment and deterrence related to the conduct giving rise to the actual damages. Allowing the remedy of punitive damages to remain attached to the claim assigned to Sentry Select furthers this public policy.

Finally, if the punitive damages remedy was not enforceable by Sentry Select as a remedy appended to the assignable claim, then

14

California law would perversely provide the Defendant-Debtor with a "windfall" because of the reasonable and prudent business practices of the Insured – maintaining insurance for its business operations. In effect, the insurance premiums paid by the Insured would have been to "insure" Defendant-Debtor from any responsibility for punitive damages arising from his misconduct. This would be contrary to well-established California law that a person cannot obtain insurance for punitive damages.[7]

---

[7] In *PPG Industries, Inc. v. Transamerica Insurance Company*, 20 Cal.4th at 316-318, the Supreme Court stated three public policy reasons for not allowing a person to obtain insurance for punitive damages liability as follows:

> *First*, there is the policy of not allowing liability for intentional wrongdoing to be offset or reduced by the negligence of another. (*See*, e.g., 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1057, pp. 454-455; Rest.2d Torts, § 481; Prosser & Keeton on Torts, supra, § 65, at p. 462; *id.*, § 67, at pp. 477-478.)... Thus, allowing PPG to shift to Transamerica its responsibility to pay the punitive damages in the third party action would violate the public policy against reducing or offsetting liability for intentional wrongdoing by the negligence of another.
>
> *Second*, the purposes of punitive damages, in both California and Colorado, are to punish the defendant and to deter future misconduct by making an example of the defendant...If we were to allow the intentional wrongdoer, ... , to shift responsibility for its morally culpable behavior to the insurance company, which surely will pass to the public its higher cost of doing business, we would defeat the public policies of punishing the intentional wrongdoer for its own outrageous conduct and deterring it and others from engaging in such conduct in the future. As we explained in a previous case: " ' "The policy considerations in a state where, as in [California], punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong...

As stated in this Supplemental Ruling, the court determines that the punitive damages remedy, which arises from the conduct of the Defendant-Debtor which is the basis of the actual damages claim of $365,000.00, is an assignable claim which is held by Sentry Select at the time of trial. Such assignable claim for punitive damages was properly asserted by Sentry Select. The court's determination that punitive damages in the amount of $50,100.25 are awarded Sentry Select is proper and said punitive damages are also nondischargeable, which amount shall be included in the judgment issued by the court.

The court issues the following Supplemental Findings of Fact and Conclusions of Law to the oral findings and conclusions stated on the record at the December 18, 2014 hearing. Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052.

Dated: March 16, 2015

RONALD H. SARGIS, Judge
United States Bankruptcy Court

---

> *Third*, our public policy prohibits indemnification for punitive damages. (*See*, e.g., Ins. Code, § 533; *Peterson v. Superior Court*, *supra*, 31 Cal. 3d at p. 157; *City Products Corp. v. Globe Indemnity Co.*, *supra*, 88 Cal. App. 3d at pp. 39-41.)...To require Transamerica to make good the loss PPG incurred as punitive damages in the third party lawsuit would impose on Transamerica an obligation to indemnify, a violation of the public policy against indemnification for punitive damages.

16

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the Order via the BNC or, if checked ____, via the U.S. mail.

  **Debtor(s)**, **Attorney for the Debtor(s)**, **Bankruptcy Trustee** (if appointed in the case), and __XX____ Other Persons Specified Below:

Office of the U.S. Trustee
Robert T. Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Gary Farrar
Chapter 7 Trustee
P.O. Box 576097
Modesto, CA 95357

Brian S. Haddix
1600 G Street, Suite 102
Modesto, CA 95354

Robert B. Salley
15250 Ventura Blvd., 9th Flr.
Sherman Oaks, CA 91403

Michael B. Ijams
1130 12th Street, Suite B
Modesto, CA 95354

Eric D. Farrar
600 E Main Street, #100
Turlock, CA 95380

Michael W. Badiou
11312 Doerksen Road
Denair, CA 95316-9730